Commonwealth *v.* Smith, Appellant.
Commonwealth *v.* Beech, Appellant.

Argued October 9, 1929.

158

Before PORTER, P. J., TREXLER, KELLER, LINN, GAW-
THROP, CUNNINGHAM and BALDRIGE, JJ. 

*Robert Tower Potts,* and with him *W. Russell Green,*
for appellants.

*J. Stroud Weber,* Assistant District Attorney, and
with him *Frank X. Renninger,* District Attorney, for
appellee.

OPINION BY KELLER, J., November 22, 1929:

These appellants, together with Max Moses and
Tobias Gelles, were jointly indicted for (1) violating the
liquor laws of the Commonwealth (five counts) and (2)
conspiracy to transport intoxicating liquor. At the
conclusion of the Commonwealth's evidence, and after
the Commonwealth's case had closed, these appellants,
Smith and Beech, separately demurred to the evidence.
The Commonwealth did not expressly join in the de-
murrer, nor refuse to do so, as it might have done and
insisted on a jury trial, (Com. v. Parr, 5 W. & S. 345,
346) but tacitly acquiesced in the demurrer, for the

court without objection from the Commonwealth, directed appellants and their counsel to withdraw from the counsel table, and the issues as to these appellants were not submitted to the jury but were disposed of by the court, who adjudged both appellants guilty of (1) possessing and (2) transporting intoxicating liquors for beverage purposes and (3) of conspiracy unlawfully to transport such liquors; and sentenced them on the count for transporting liquors and on the conspiracy charge, the sentences being concurrent and for the same period of time.

The other defendants Moses and Gelles elected to present their defenses and go to the jury. Moses was convicted and Gelles acquitted.

In the course of his testimony before the jury, Moses gave evidence that was damaging to the appellants, Smith and Beech, and the court of its own motion addressed counsel for the appellants whom it had previously instructed to withdraw from the counsel table, as follows: "Mr. Green, you had better take your seat at counsel table and bring your client [Beech] forward. Mr. Potts, take your seat at the counsel table and bring your client [Smith] forward. Do you, Mr. Weber [assistant district attorney] at this point, move to re-open the Commonwealth's case and offer in evidence in the cases against Beech and Smith, the testimony of Moses?'"

Mr. Weber: "Yes, I so move, Your Honor."
The Court: "Motion allowed."
Mr. Potts, "I object to that."
The Court: "Note the objection."
Mr. Potts: "I ask for an exception.'"
The Court: "Note the exception."
Mr. Green: "I object also, Your Honor, and ask for an exception."
The Court: "Note the exception. Also note that the

Court takes this action at this time, so that Mr. Green and Mr. Potts, may have the opportunity to cross-examine the witness. Now you may proceed with your cross-examination, Mr. Weber.''

Appellants' counsel took no part in the examination of the witness or in the subsequent conduct of the trial. The court in adjudging appellants guilty as above-mentioned considered the evidence of Moses so far as it related to them.

We are all of opinion that the action of the court thus objected to was wrong.

When the demurrers to the evidence were filed by the appellants respectively and tacitly joined in by the Commonwealth, the case was closed so far as the taking of testimony for or against them was concerned. In Sadler on Criminal Practice and Procedure, p. 315, the learned author says: ''Though unusual, a demurrer to the Commonwealth's evidence may be entered *after its case is closed.* The jury may then be discharged and the question of the guilt or innocence of the defendant left to the determination of the court.''

The practice in demurrers to the evidence and their effect when joined in by the Commonwealth is set forth in Com. v. Parr, supra; Hutchison. v. Com., 82 Pa. 472; Com. v. Williams, 71 Pa. Superior Ct. 311; Com. v. Ernesto, 93 Pa. Superior Ct. 339, 341.

When the demurrers to the evidence were entered and concurred in by the Commonwealth the effect was to discharge the jury as to these appellants, though as there were other defendants to be tried by the jury, they could not actually be dismissed from the jury box. The only thing remaining to be done was for the court to determine the guilt or innocence of the demurrants from the evidence in the case at the time the case was closed as to them. Subsequent evidence received on the trial of the remaining defendants whether favor-

able or adverse to the demurrants could not be considered; and the court erred in reopening the evidence as to them and considering, as against them, the testimony of Moses.

But it does not follow that because of this error the judgments must be reversed.

The Commonwealth can appeal from a judgment of acquittal entered by the court on a demurrer to the evidence, joined in by the Commonwealth: Com. v. Parr, supra; Sadler on Criminal Practice and Procedure, p. 439; and it is the duty of the appellate court in such case to enter the judgment warranted by the evidence in the court below: Sadler, supra, p. 439; for on a demurrer to the evidence, every fact which the jury could infer in favor of the party offering it, from the evidence demurred to is to be considered as admitted: Com. v. Parr, supra, p. 347; "In criminal cases demurrer to the evidence of the Commonwealth admits all the facts which the evidence tends to prove, and all inferences reasonably deducible therefrom . . . . . . The court in such case is not the trier of the facts. The admissions implied in the demurrer leave for consideration the single inquiry whether the evidence introduced presents such a state of facts, with the inferences fairly arising therefrom as would support a verdict of guilty": Com. v. Williams, supra, p. 313.

Adopting this standard and considering only the evidence in the case at the time the demurrers to the evidence were entered, we are of opinion that it presents such a state of facts, with the inferences fairly arising therefrom, as would support a verdict of guilty against these appellants on the count for unlawfully transporting intoxicating liquors and the indictment charging conspiracy unlawfully to transport such liquors; and as these are the charges on which sentence

was imposed, that the judgments appealed from should be affirmed.

The evidence may be briefly summarized as follows: Shapiro, the driver of the truck, testified on behalf of the Commonwealth that he heard a conversation between Moses, Beech and Smith as they were standing near to the entrance of a garage in Philadelphia, and about four or five feet away from a loaded truck, relative to securing a driver for the truck; that they wanted a driver, and as he, Shapiro, was out of work he offered to drive the truck. Moses asked him if he could drive that truck and the witness said he could. He was told to drive the car to Ardmore, Montgomery County, for which he was to get five dollars; that he was to follow Smith who would go ahead in an Oakland sedan. All this occurred in the presence of both appellants. That he [Shapiro] asked Smith what was in the truck, and Smith said "wine," and that he had a permit for it. Following this, Shapiro was given a card showing the licensed owner of the truck to be Max Moses. Smith and Beech then got in the sedan and started off on the road to Ardmore, Shapiro following in the truck; that he lost the sedan in the traffic in the neighborhood of Nineteenth Street and Girard Avenue but proceeded to Ardmore and stopped at a gasoline station, where he waited for the others, and while waiting there was arrested, and forty-five gallons of wine in jugs or cartons were found on the truck and seized. Shapiro told the police what had occurred and they made a search for the people in the Oakland sedan whom Shapiro had been instructed to follow, and found Moses, Smith and Beech waiting near a parked Oakland sedan on Lancaster Pike at Lehigh Avenue, near the gasoline station abovementioned, and arrested them and Gelles, who was in the back seat of the sedan, and took them to the Ardmore Station House where

Shapiro identified Moses, Beech and Smith as the persons for whom they were looking; Moses, as the man who had hired him to drive the truck, and Smith and Beech as the persons in the Oakland sedan whom he was to follow in the truck—Gelles he did not know at all. None of the persons so identified by Shapiro said anything or made any response to his statement or identification.

We think it may reasonably be inferred from this testimony, which by reason of the demurrers must be taken to be true, that Moses, Smith and Beech were engaged in a common enterprise of transporting this truck loaded with wine; that in furtherance of such common enterprise Moses in the presence and with the approval of the other two engaged Shapiro to drive the truck to Ardmore, directing him, in their presence, to follow the course taken by Smith and Beech who were to precede him and show him the way to the destination where the wine was to be delivered in execution of such common enterprise; that Smith and Beech, as well as Moses, proceeded to Ardmore for the purpose of carrying out the common design and were there awaiting the arrival of Shapiro when arrested; and that the evidence is sufficient to support the conviction of Smith and Beech of illegally transporting intoxicating liquors and of conspiracy unlawfully to transport such liquor in Montgomery County: Com. v. Gillespie, 7 S. & R. 469, 478; Collins v. Com., 3 S. & R. 220, 223; Com. v. Deutsch, 72 Pa. Superior Ct. 298, 310; Com. v. Westervelt, 11 Phila. 461.

For this reason we sustain the court in adjudging the appellants guilty on the fourth count of Bill No. 26 and as indicted in Bill No. 26-1, and in sentencing them pursuant to such finding. The indictment for conspiracy specifically named Shapiro as having been em-

ployed to drive the truck for the defendants: Heine v. Com., 91 Pa. 145.

We might have quashed the appeals for failure of appellants to print their assignments of error, (Rule 43), but we prefer to dispose of them on the merits.

The judgment in each appeal is affirmed and it is ordered that each of the defendants appear in the court below at such time as he may be there called and that he be by that court committed until he has complied with the sentence or any part of it which had not been performed at the time the appeal was made a supersedeas.