## UNITED STATES v. McCARTHY.

### No. 10485.

United States Court of Appeals
Seventh Circuit.

May 9, 1952.

Jack Arnold Welfeld, Chicago, Ill., Lucas & Thomas, Chicago, Ill., of counsel, for appellant.

Gilmore S. Haynie, U. S. Atty., Ft. Wayne, Ind., James E. Keating, Asst. U. S. Atty., South Bend, Ind., Joseph J. Cella, Washington, D. C., for appellee.

Before KERNER, DUFFY and FINNEGAN, Circuit Judges.

FINNEGAN, Circuit Judge.

This is an appeal from a judgment of the United States District Court, for the Northern District of Indiana, Hammond Division, finding defendant guilty on each count of an indictment charging misapplication of funds and the making of false entries in violation of sec. 657 and sec. 1006, Title 18 U.S.C.A.

The indictment contains nine counts. In counts 1 to 8 inclusive, defendant was charged with violating sec. 657, Title 18 U.S.C.A., which provides in part:

"Whoever, being an officer, agent or employee of or connected in any capacity with * * * any lending * * corporation or association authorized or acting under the laws of the United States * * * embezzles, abstracts, purloins or willfully misapplies any moneys, funds * * * belonging to such institution, * * *. shall be fined not more than $5000 or imprisoned not more than five years, or both * * *."

Count 9 is based on sec. 1006, Title 18 U.S.C.A.:

"Whoever, being an officer, agent or employee of or connected in any capacity with * * * any lending * * corporation or association authorized or acting under the laws of the United States, with intent to defraud any such institution * * * makes any false entry in any book, report or statement of or to any such institution * * * shall be fined not more than $10,000 or imprisoned not more than five years, or both."

Defendant entered a plea of not guilty, waived trial by jury and was tried by the court. On a finding of guilty on all counts,

the court sentenced her to one year on each count, the sentences to run concurrently.

Defendant's motions for acquittal at the close of the Government's case, and at the close of all the evidence, were denied, as were her subsequent motions for acquittal notwithstanding the verdict, in arrest of judgment and for a new trial.

For reversal of the judgment, defendant urges four grounds: (1) that the Government failed to prove the defendant was possessed of an intent to defraud or that there was a misapplication of funds; (2) that the trial court erred in overruling motions for a judgment of acquittal; (3) that the evidence was as consistent with innocence as it was with guilt; and (4) that defendant did not receive a fair trial.

Substantial evidence in the record shows the following facts: The Sinclair Refining Company, at its East Chicago, Indiana, plant, had what was known as the Sinclair Refining Employees Federal Credit Union, which was a lending association, organized and existing under the laws of the United States. Defendant was employed by the Credit Union on February 21, 1949. She was appointed an assistant treasurer. Her duties included the acceptance of cash deposits from members; the preparation of proper vouchers to reflect her cash receipts; the posting of such vouchers into the proper books and accounts; the withdrawal of funds of the Credit Union from the First National Bank of East Chicago, Indiana, for the Change Fund, and the deposit of moneys from the Change Fund to the credit of the Credit Union in the bank.

From the date of her employment in February 1949, through November 1949, her accounts were balanced at the end of each month. Her books and accounts were not in balance for December 1949.

An audit was made in January 1950 by an examiner of the Bureau of Federal Credit Unions. It disclosed that 13 separate discrepancies and cash shortages occurred in December 1949 and early January 1950 in the book accounts kept by defendant for the Credit Union. According to the audit, the total amount of such shortages was $2468.37, of which sum $468.37 comprised

the shortages in pass book accounts and other cash shortages. In the instances where discrepancies or shortages occurred in pass book accounts, defendant made entries in the pass books of depositing members showing the amount deposited, but made no voucher for cash received, nor entry in the cash register or journal for the amounts so received.

On December 2, 1949, defendant withdrew $10,000 from the account of the Credit Union from the First National Bank of East Chicago, Indiana, for the use of the Change Fund. On December 5, she withdrew from the Change Fund the sum of $10,000 and made a deposit in said bank of $8,000, withholding $2,000 of said withdrawal, she says, to take care of a loan to a Mr. Clark, a member, who was buying a new automobile. Mr. Clark made no application for such loan, although he made inquiry, of the manager of the Credit Union, about the rate charged for loans.

Mr. Clark bought his new car on November 29, 1949, securing a loan elsewhere. The defendant says the $2,000 was held in the vault of the Credit Union in anticipation of the Clark loan, and the record shows it was deposited in the bank by her on December 30, 1949. The evidence regarding this sum of $2,000 is conflicting.

On December 30, 1949, defendant again withdrew from the account of the Credit Union in the bank, $10,000 for the use of the Change Fund, and on January 3, 1950 withdrew from the Change Fund $10,000 for deposit to the account of the Credit Union in the bank, but deposited only $8,000, withholding $2,000 and making an entry in the cash record and journal showing the deposit on January 3, 1950 as $10,000.

Defendant testified in her own behalf and gave many varied, conflicting and evasive explanations of the missing funds and false entries. She contends her inexperience in bookkeeping and natural mistakes were the cause of what appeared to be shortages and false entries and that the evidence presented was as consistent with innocence as it was with guilt.

In the record we find this statement by counsel for defendant:

"Our defense is that if this money is short, if there is a shortage in any money she handled, that it is due to the same type of human error that not only is an inexperienced girl apt to make, but an experienced business man, with some accounting experience, may make, and that this type of work, the very nature of the work is such as to make it easy to err."

The manager and five depositing members of the Credit Union, an assistant cashier and a teller of the First National Bank of East Chicago, Indiana, an examiner of the Bureau of Federal Credit Unions, and an agent of the F.B.I. testified for the Government. The defendant, her son, several character witnesses, a former employee, and five members of the Credit Union, gave evidence for the defendant.

In reviewing the evidence, before making his finding, the trial court said:

"* * * In this case, there is no doubt that the money was taken; at least it was not there; there is a shortage. There have been manipulations of the books; no doubt about that. Somebody made off with $2400; the money is gone. But nobody, of course, saw the money leave the Credit Union, at least nobody has testified that he saw it; no one has seen the defendant take it; she has not admitted it. So the guilt or innocence of the defendant in this case must be determined by circumstantial evidence. * * *

"The logical and inescapable conclusion is that these manipulations and shortages point to the defendant, who had charge of these vouchers and this money. * * *

"* * * These were not all mistakes, as the defendant has attempted to indicate, but they were manipulations, manipulations designed to cover up these shortages. These manipulations can only fall at the doorstep of one person. All of these things, many improvised stories and explanations the defendant has related, as suits her convenience, are circumstantial evidence that points to guilt. * * *"

■ Of course, we recognize that the circumstances, in order to justify conviction, must not only be consistent with the theory of guilt but also must be inconsistent with any reasonable theory of innocence. What the circumstances truly were and what they prove were questions for the trier of the facts. Carter v. United States, 5 Cir., 194 F.2d 748–749.

■ Was the explanation of shortages and false entries offered by defendant so unsatisfactory as to justify the trial court in rejecting it? This, to a large extent, depends on the credibility of the witnesses who testified in this case. Questions of credibility are for the trial judge who saw the witnesses and heard them testify, and not for the Court of Appeals. We cannot weigh the evidence. It is quite apparent that the trial judge did not believe the explanation of the defendant.

The manner of reviewing the sufficiency of evidence to sustain a conviction is the same whether the defendant is tried before a judge or before a jury. Jelaza v. United States, 4 Cir., 179 F.2d 202–204–205.

Defendant contends the government failed to prove she was possessed of an intent to defraud and that the trial court erred in overruling her motions for judgment of acquittal.

■ Intent is to be determined by the fact finder from the facts and surrounding circumstances in evidence.

"Where intent of the accused is an ingredient of the crime charged, its existence is a question of fact which must be submitted to the jury. * * * Whether that intent existed, the jury must determine, not only from the act of taking, but from that together with defendant's testimony and all the surrounding circumstances." Morissette v. United States, 342 U.S. 246–274–276, 72 S.Ct. 240–255–256.

■ We find nothing in the record of this case that indicates any error committed by the trial court in denying defendant's motion for acquittal.

■ Defendant complains that she did not receive a fair trial. In her brief she levels criticism at the trial judge that is in no particular borne out by the record. It would serve no useful purpose to discuss in detail the complaints made. She chose a court trial. She was a very evasive witness. The questions put to her by the court were for the purpose of ascertaining the true facts. The conduct of the judge was neither improper nor abusive, as charged. The extent of the court's examination was within its power to elicit the truth. Such examination rests in the sound discretion of the trial court. Glasser v. United States, 315 U.S. 60–82, 62 S.Ct. 457, 86 L.Ed. 680. There was no abuse of discretion.

■ The case is here, therefore, under the rule that the evidence is to be considered in the light most favorable to the Government, and that we may reverse only if we can say that there is no substantial evidence to support the finding of guilty. After a review of the record, we find no prejudicial error. It is our view that defendant had a fair and impartial trial before an experienced judge, and that there was substantial evidence to support the finding of guilty and the judgment entered by the trial court. Therefore the judgment is affirmed.